## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CHAPTER1 LLC, on behalf of itself and all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| THE UNITED STATES, and U.S. CUSTOMS AND BORDER PROTECTION, | ) ) ) ) |
| Defendants. | ) ) ) |

Case No. 25-cv-97

## MOTION FOR CLASS CERTIFICATION

# **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................................2

II.   FACTS AND PROPOSED CLASS DEFINITIONS ...........................................3

III.  ARGUMENT .........................................................................................................4

     A.    The Proposed Class Satisfies Rule 23(a) ....................................................4

     B.    The Proposed Class Satifies Rule 23(b)(3)...................................................5

     C.    This Court Should Exercise Its Discretion to Certify a Class
         Action ..........................................................................................................7

IV.   CONCLUSION ......................................................................................................8

## I.    PRELIMINARY STATEMENT

On April 2, 2025, the President issued Executive Order 14257, titled "Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits." This order (in addition to several prior orders) purported to invoke the President's authority under the International Emergency Economic Powers Act (IEEPA). Executive Order 14257 declared a national emergency and imposed an "*ad valorem* duty on all imports from all trading partners . . . start[ing] at 10 percent . . ." and increasing for each country by a percentage equal to quotient of the U.S. trade deficit with that country and the value of U.S. imports from that country divided by two. On April 9, the President issued a 90-day pause on the additional quotient-based tariffs for all nations other than China and left the 10% worldwide tariff in effect. The upshot of these orders is that goods from anywhere in the world are subject to a duty of at least 10% and goods from China are subject to a duty of at least 145%. From the President's April 2 order to the time of this filing, U.S. importers have paid at least $13 billion in duties pursuant to tariffs for which IEEPA was the purported source of authority.

This Court declared those duties unconstitutional on May 28, 2025. Plaintiff Chapter1 LLC paid approximately $22,953.50 in tariffs imposed pursuant to IEEPA and it brings this Action seeking a money judgment to recover that money. Hundreds of thousands of other American businesses have exactly the same claim, based on exactly the same legal theory, against the United States: Each importer has a claim against the United States for repayment of the tariffs it paid. All importers' claims

are identical except for the amount paid, which will be trivially easy to calculate based on records in CBP's possession. This case thus easily meets the standards for class certification in Court of International Trade Rule 23(a) and (b)(3).

This case also calls for the exercise of this Court's discretion to certify a class action. In *Baxter Healthcare v. United States*, this Court determined that a class action seeking recovery of unconstitutionally exacted harbor-maintenance taxes should not be certified despite satisfying the requirements of Rule 23 because (a) an administrative procedure for refunds was already in place, (b) many parties had already sued, and (c) the taxes were exacted pursuant to a statute enacted by Congress and, therefore, the Court ought not to create a recovery process that would burden taxpayers with small claims without Congressional action. 925 F. Supp. 794, 799–800 (CIT 1996) (Restani, J.). Those considerations all favor certification here— the United States is still collecting tariffs that this case alleges to be unconstitutional; only a handful of parties have sued; and Congress did not impose the tariffs here but did, through this Court's jurisdictional statute, 28 U.S.C. § 1581(i), and the Rules Enabling Act, 28 U.S.C. § 2072, vest in this Court the power to return illegally exacted tariffs on a class-wide basis.

## II.    FACTS AND PROPOSED CLASS DEFINITIONS

The facts of this case are straightforward and undisputed. Since taking office, the President has imposed several sets of tariffs using IEEPA as a purported source of authority. *See, e.g.*, *V.O.S. Selections, Inc. v. United States*, No. 25-00066, 2025 WL 1514124, at *4–*6 (C.I.T., May 28, 2025) (detailing undisputed facts). Collectively this Court and Chapter1 refer to these as the "Challenged Tariffs Orders." *Id.*

Chapter1 imported a machine on May 5, 2025, and paid $22.953.50 in tariffs that were imposed by the Challenged Tariff Orders. *See* Statement of Undisputed Material Facts (SUMF) ¶ 5. Chapter1 proposes to certify a single class consisting of all people who have paid tariffs pursuant to the Challenged Tariffs Orders.

## III.    ARGUMENT

Rule 23 of the United States Court of International Trade Rules is essentially identical to Federal Rule of Civil Procedure 23. *See Baxter*, 925 F. Supp. at 797 n.4. To bring a class action, a plaintiff must show that the proposed class satisfies Rule 23(a) and at least one subsection of Rule 23(b). Here, the class satisfies Rule 23(a) and Rule 23(b)(3).

### A.    The Proposed Class Satisfies Rule 23(a)

Under Rule 23(a),

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

All of these prerequisites—called respectively "numerosity," "commonality," "typicality," and "adequacy" are easily met here.

*First*, although publicly available data does not show exactly how many individual importers paid tariffs since April 2, 2025, CBP reports that it processed more than 21 *million* entry summaries in this fiscal year. *See, e.g.*, U.S. CUSTOMS AND BORDER PROTECTION, *Trade Statistics*, https://www.cbp.gov/newsroom/stats/trade

(last accessed May 22, 2025, at 10:10 AM). There are surely hundreds of thousands of members of the class, far too many for joinder to be practicable in this Action without a class certified.

*Second*, there are many questions of law and fact common to the class. The common questions of fact include, without limitation, whether trade deficits with other countries are "unusual" or "extraordinary" within the meaning of IEEPA. The common questions of law include, without limitation, whether IEEPA authorizes the imposition of tariffs at all and whether, if IEEPA does authorize tariffs in response to an emergency within the President's unreviewable discretion to declare that law is unconstitutional.

*Third*, Chapter1's claims are typical of, indeed identical to, those of the class. Chapter1 paid tariffs on those goods pursuant to the Challenged Tariff Orders. Its claims are thus typical of those of the class.

*Fourth*, Chapter1 will adequately protect the interests of the class. It has no known conflicts of interest and its claims, as explained above, are identical to those of the class and subclass. Class counsel at Gerstein Harrow have served as lead counsel in many complex class actions in courts across the country. SUMF ¶¶ 7–11. They commit to adequately protect the interests of absent classmembers.

### B.    The Proposed Class Satifies Rule 23(b)(3)

Under Rule 23(b)(3), a class action may be certified where "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

These requirements are known respectively as "predominance" and "superiority." To determine predominance and superiority, Rule 23(b)(3) provides a non-exhaustive list of considerations:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

All of these factors favor class certification here.

As a preliminary matter, common questions will vastly outweigh individual ones in this matter. The *only* individual question in this litigation will be how much money each class member paid. That question will itself be easily resolvable using CBP data—indeed CBP publishes publicly the exact amount it has collected pursuant to tariffs enacted under Executive Order 14257, and that amount is the exact measure of damages. *Compare* U.S. CUSTOMS AND BORDER PROTECTION, *Trade Statistics*, https://www.cbp.gov/newsroom/stats/trade (last accessed May 22, 2025, at 10:10 AM), *with Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (requiring that class-action proponents show that damages are capable of measurement on a class-wide basis and that "a model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory"). Common questions, by contrast, abound: all of the material facts (and none are in dispute) apply to all members of the class and subclass identically, and all of the questions of law do too. Further, membership in the class will be trivially easy to ascertain. The

class's membership is ascertainable from data in CBP's sole possession—every importer who paid tariffs under Executive Order 14257.

The factors guiding the Court's class-certification decision all clearly favor certification here. Because all claims are identical, parties have very little interest in individually controlling the litigation, and in any event may opt out if they choose. To undersigned counsel's knowledge, only four cases regarding the Challenged Tariff Orders have been filed so far. *State of Oregon v. Trump, et al.*, No. 25-CV-0077 (CIT); *Emily Ley Paper, Inc. v. Trump*, No. 3:25-CV-464, ECF No. 37 (N.D. Fla. May 20, 2025) (transferring case to this Court); *V.O.S. Selections, Inc., v. Trump, et al.*, No. 25-CV-0066 (CIT); *Princess Awesome LLC v. U.S. Customs & Border Protection*, No. 25-CV-0078 (CIT). Concentrating all litigation in this forum is not only desirable but required by federal law because this Court has exclusive subject matter jurisdiction over all international-trade disputes. *E.g.*, *Emily Ley Paper*, No. 3:25-CV-464, ECF No. 37 (so holding). Finally, as explained above, this class will be easily ascertainable and manageable. The requirements of Rule 23(b)(3) are, therefore, met.

### C.    This Court Should Exercise Its Discretion to Certify a Class Action

This Court has previously held that even where a class action satisfies the factors articulated in Rule 23(b)(3), it is nonetheless appropriate to conducted "a broader-based consideration of Rule 23" and consider whether "utilization of Rule 23 to be favored simply because it is an avenue of relief for taxpayers who most likely cannot as a practical matter pursue separate court actions?" *Baxter*, 925 F. Supp. at 799. Here, it is.

In *Baxter*, the Court was motivated by concerns that point towards certification here, not against it. The core difference between *Baxter* and this case is that here the repayment of small claims that would otherwise be impracticable to bring individually is affirmatively favored by Congressional policy. Congress did not create the tariffs at issue in this case, and if this Court has already concluded that Congress did not authorize the President to impose those tariffs. *V.O.S. Selections*, 2025 WL 1514124. By contrast, Congress *did* empower this Court to order repayment of illegally exacted tariffs through its rulemaking authorization. *Compare, e.g.*, 28 U.S.C. § 2701 (authorizing "all district courts" of the United States to promulgate rules for the conduct of their business), *with* 28 U.S.C.A. § 1585 ("The Court of International Trade shall possess all the powers in law and equity of, or as conferred by statute upon, a district court of the United States"); *see also* 28 U.S.C. § 2072 (authorizing the creation of federal rules by the Supreme Court with review by Congress).

## IV.  CONCLUSION

For the foregoing reasons, this Court should certify the proposed class.


Respectfully submitted,

*/s/ Charles Gerstein*
Charles Gerstein
Jeremy Shur
(*pro hac vice* application forthcoming)
GERSTEIN HARROW LLP
400 7th Street NW, Suite 304
Washington, DC 20025
charlie@gerstein-harrow.com
(202) 670-4809

Jason Harrow
GERSTEIN HARROW LLP
12100 Wilshire Blvd. Suite 800
Los Angeles, CA 90025
jason@gerstein-harrow.com
(323) 744-5293

*Attorneys for Plaintiffs*